**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| FIRST BANK CHICAGO F/K/A FIRST BANK OF HIGHLAND PARK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-CV-00643-MSN-JFA |
| AMERICAN ELECTRIC POWER SERVICE CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**AMENDED ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF OF**
**DEFENDANT AMERICAN ELECTRIC POWER SERVICE CORPORATION**

Now comes Defendant American Electric Power Service Corporation ("AEPS"), through counsel, and for its Answer to the Complaint of Plaintiff First Bank Chicago f/k/a First Bank of Highland Park ("FBC") hereby admits, denies, and states as follows:

1.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 of the Complaint and, therefore, denies those allegations.

2.     AEPS admits the allegations in Paragraph 2 of the Complaint.

3.     The allegations in Paragraph 3 of the Complaint consist of legal conclusions and FBC's characterization of its legal claims to which no response is required.  Further answering, AEPS states that the terms of the Payment Agreement attached as Exhibit 1 to FBC's Complaint speak for themselves.  To the extent a response is required, AEPS admits that FBC purports to base jurisdiction on the statutory provisions cited.  AEPS further admits that it consented to jurisdiction in this District under the terms of the Payment Agreement but denies that the Payment Agreement is a binding contract.  AEPS admits that Asset Finance Group, Inc. ("Asset

Finance") was the original counterparty to the Payment Agreement at issue but denies that Asset Finance was ever a "lender" to AEPS under the Payment Agreement or otherwise.  Further answering, AEPS denies each and every other allegation in Paragraph 3 not specifically admitted herein.

4.       The allegations in Paragraph 4 of the Complaint consist of legal conclusions to which no response is required.

5.       In response to the allegations in Paragraph 5 of the Complaint, AEPS states that AEPS entered into the subject Payment Agreement but denies that the Payment Agreement was entered into on or about June 18, 2020.  Rather, AEPS signed the Payment Agreement on July 25, 2020.  AEPS further states that that the Payment Agreement is not a stand-alone contract, but rather was entered into as part of a larger transaction involving a Master Agreement for cybersecurity services between AEPS and IronNet Cybersecurity Inc. ("IronNet") and a Statement of Work and Change Order issued under the Master Agreement, none of which FBC describes, cites, or even mentions in its Complaint.  AEPS denies that Asset Finance was ever a "lender" to AEPS under the Payment Agreement or otherwise.  Further answering, AEPS denies every other allegation in Paragraph 5 not specifically admitted herein.

6.       In response to the allegations in Paragraph 6 of the Complaint, AEPS states that the terms of the Payment Agreement speak for themselves.  AEPS denies the allegations insofar as they purport to characterize AEPS's obligations under the Payment Agreement as standalone, absolute, and unconditioned upon the terms of the larger transaction with IronNet and AEPS's receipt and acceptance of the equipment and services from IronNet contemplated under the Payment Agreement.  Further answering, AEPS denies each and every other allegation in Paragraph 6.

7.      In response to the allegations in Paragraph 7 of the Complaint, AEPS states that the terms of the Payment Agreement speak for themselves.  AEPS denies the allegations insofar as they purport to characterize AEPS's obligations under the Payment Agreement as standalone, absolute, and unconditioned upon the terms of the larger transaction with IronNet and AEPS's receipt and acceptance of the equipment and services from IronNet contemplated under the Payment Agreement.  Further answering, AEPS denies each and every other allegation in Paragraph 7.

8.      In response to the allegations in Paragraph 8 of the Complaint, AEPS states that the terms of the Payment Agreement speak for themselves.  AEPS denies the allegations insofar as they purport to characterize AEPS's obligations under the Payment Agreement as standalone, absolute, and unconditioned upon the terms of the larger transaction with IronNet and AEPS's receipt and acceptance of the equipment and services from IronNet contemplated under the Payment Agreement.  Further answering, AEPS denies each and every other allegation in Paragraph 8.

9.      In response to the allegations in Paragraph 9 of the Complaint, AEPS states that the terms of the Payment Agreement speak for themselves.  AEPS denies the allegations insofar as they purport to characterize AEPS's obligations under the Payment Agreement as standalone, absolute, and unconditioned upon the terms of the larger transaction with IronNet and AEPS's receipt and acceptance of the equipment and services from IronNet contemplated under the Payment Agreement.  Further answering, AEPS denies each and every other allegation in Paragraph 9.

10.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint and therefore denies the allegations.

11.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 of the Complaint and therefore denies the allegations.

12.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Complaint and therefore denies the allegations.

13.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint and therefore denies the allegations.

14.     AEPS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Complaint and therefore denies the allegations.

15.     AEP denies the allegations in Paragraph 15 of the Complaint.

16.     The allegations in Paragraph 16 of the Complaint consist of legal conclusions to which no response is required.  Further answering, AEPS states that the terms of the Payment Agreement attached as Exhibit 1 to FBC's Complaint speak for themselves.  To the extent a response is required, AEPS denies the allegations in Paragraph 16 of the Complaint.

17.     The allegations in Paragraph 17 of the Complaint consist of legal conclusions to which no response is required.  Further answering, AEPS states that the terms of the Payment Agreement attached as Exhibit 1 to FBC's Complaint speak for themselves.  To the extent a response is required, AEPS denies the allegations in Paragraph 17 of the Complaint.

18.     AEPS denies the allegations in Paragraph 18 of the Complaint.

19.     In response to the allegations in Paragraph 19 of the Complaint, AEPS admits that demand was made on AEPS for payment under the Payment Agreement but denies that it owes any monies under the Payment Agreement.  AEPS denies the remaining allegations in Paragraph 19 of the Complaint.

20.     The allegations in Paragraph 20 of the Complaint consist of legal conclusions to which no response is required.  To the extent a response is required, AEPS denies the allegations in Paragraph 20 of the Complaint.

21.     In response to the allegations in Paragraph 21 of the Complaint, AEPS states that the terms of the Payment Agreement speak for themselves.

22.     AEPS incorporates the admissions, denials, and averments in the foregoing paragraphs as if fully rewritten herein.

23.     The allegations in Paragraph 23 of the Complaint consist of legal conclusions to which no response is required.  To the extent a response is required, AEPS denies the allegations in Paragraph 23 of the Complaint.

24.     AEPS denies the allegations in Paragraph 24 of the Complaint.

25.     AEPS denies that FBC is entitled to the relief requested in the Complaint's Prayer for Relief.

26.     AEPS denies any and all allegations contained in the Complaint not expressly admitted herein.

<u>**FIRST DEFENSE**</u>

27.     FBC's claim for relief fails, either in whole or in part, for lack of consideration.

<u>**SECOND DEFENSE**</u>

28.     FBC's claim for relief fails, either in whole or in part, under the doctrine of unconscionability.

<u>**THIRD DEFENSE**</u>

29.     FBC's claim for relief fails, either in whole or in part, due to fraud in the inducement.

5

**FOURTH DEFENSE**

30.     FBC's claim for relief fails, either in whole or in part, due to mutual mistake.

**FIFTH DEFENSE**

31.     FBC's claim for relief fails, either in whole or in part, because the assignment of the Payment Agreement was invalid.

**SIXTH DEFENSE**

32.     FBC's claim for relief fails, either in whole in part, because the terms of the Payment Agreement are subject to conditions precedent under the Master Agreement and the Statement of Work and Change Order issued under it which conditions precedent were neither satisfied nor waived.

**SEVENTH DEFENSE**

33.     FBC's claim for relief fails, either in whole or in part, because AEPS has made all payments required under the Payment Agreement.

**EIGHTH DEFENSE**

34.     FBC's claim for relief fails, either in whole or in part, because it is not a holder in due course.

**NINTH DEFENSE**

35.     FBC's claim for relief fails, either in whole or in part, for lack of mutual obligation.

WHEREFORE, having fully answered, AEPS prays that the Complaint be dismissed with prejudice, that it be granted its reasonable costs, expenses, and attorneys' fees, and that it be granted such other and further relief to which it may be entitled.

## COUNTERCLAIM

Now comes Defendant American Electric Power Service Corporation ("AEPS"), though counsel, and for its Counterclaim against Plaintiff First Bank Chicago f/k/a First Bank of Highland Park ("FBC"), alleges as follows:

## PARTIES

1.      Defendant AEPS is a New York corporation with its principal place of business in Columbus, Ohio.  AEPS provides management and other services to the operating companies of American Electric Power Company, Inc. ("AEP"), one of the largest investor-owned public utility holding companies in the United States.

2.      Upon information and belief, and as alleged in the Complaint, Plaintiff FBC is a bank chartered under Illinois law, with its principal place of business in Highland Park, Illinois.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1332, and may declare the rights and other legal relations of the parties to this dispute under 28 U.S.C. §§ 2201–2202.

4.      This Court has personal jurisdiction over FBC in that FBC brought this action in this District by invoking the forum selection clause contained in the Payment Agreement that is the subject of this lawsuit, which is attached to the Complaint at Exhibit 1.

5.      Venue is proper in this district under 28 U.S.C. § 1391.  FBC filed its Complaint in this District and thus have consented to venue in this Court.

## STATEMENT OF FACTS

### The Master Agreement

6.      The Payment Agreement at issue in this litigation was part of a larger transaction between AEPS and IronNet Cybersecurity, Inc. ("IronNet").  On information and belief, IronNet

is a Delaware corporation headquartered in McLean, Virginia.  IronNet claims to be a global provider of cybersecurity goods and services.

7.     On May 9, 2017, AEPS and IronNet entered into an agreement entitled "Master Agreement for Iron Dome (sic) Between IronNet Cybersecurity, Inc. and American Electric Power Service Corporation for the Energy Sector IronDome Project" (the "Master Agreement"). A true and accurate copy of the Master Agreement is attached to this Counterclaim at Exhibit A.

8.     Under the Master Agreement, IronNet agreed to provide certain equipment and services in connection with AEPS's participation in a nationwide cybersecurity project for electric utilities known as "IronDome."  The actual equipment and services that IronNet would deliver to AEPS for the IronDome project was to be more specifically defined in separate statements of work ("SOW") negotiated between IronNet and AEPS.  (*See* Master Agreement, Sec. II.)

9.     The Master Agreement contemplated an initial term of five years with a right to renew until every SOW had expired, unless terminated earlier.  (*Id*., Sec. XII.A.)  In this regard, the Master Agreement granted to AEPS the right to terminate for convenience the agreement and any SOW, in whole or in part, at any time, subject to certain conditions that are not relevant to the present dispute.  (*Id*., Sec. XII.C.)

10.    The Master Agreement contained detailed terms and conditions governing AEPS's payments to IronNet.  The Master Agreement stated that "[a]ll invoices and payments will be issued in accordance with the SOW, subject to any terms or conditions specified therein." (*Id*., Sec. III.A.)  The Master Agreement made clear that AEPS would not be obligated to make any payments unless and until the equipment and services were delivered and completed. "IronNet and AEPS acknowledged that certain payments and obligations may be triggered only

upon delivery and/or satisfactory completion of milestones as specified in the SOW." (*Id*., Sec. II.B.)

**The Initial SOW and the First Payment Agreement**

11.      Actual payments under the Master Agreement and agreed-upon SOWs, however, were not to be submitted directly to IronNet.  The Master Agreement contemplated each SOW would include a "Payment Agreement" between AEPS and another entity, Asset Finance Group, Inc. ("Asset Finance"), in a form identical to the Payment Agreement at issue here.  (*See id.*, Sec. X.G.)  The Master Agreement specified that Attachment 4 to the original SOW, which was negotiated contemporaneously with the Master Agreement, represented the form of agreement for any Payment Agreement.  (*Id.*)

12.      The initial SOW under the Master Agreement was entered into on or about May 18, 2017, soon after the Master Agreement was executed.  A true and accurate copy of the original SOW, denominated Agreement No. 02921977001x103, is attached to this Counterclaim at Exhibit B.

13.      The initial SOW called for IronNet to supply cybersecurity sensor equipment, hardware, and software, along with maintenance and support services.  The SOW specifically provided in the opening paragraph that "[i]f a conflict arises between the [Master] Agreement and this SOW, the terms and conditions of the [Master] Agreement will govern." (*Id.*)

14.      The SOW set out a milestone schedule over a five-year period, along with a payment schedule for the first two years, for IronNet's provisions of the equipment and services. As contemplated by the Master Agreement, the SOW attached the form Payment Agreement, which AEPS signed on May 26, 2017, and Asset Finance signed on May 31, 2017.  This first Payment Agreement between AEPS and Asset Finance set out a two-year payment schedule that

reflected the milestone and payment schedule for the first two years of the SOW, with AEPS required to make payments for the equipment and services IronNet delivered under the SOW directly to Asset Finance.

15.     This first Payment Agreement between AEPS and Asset Finance contained boilerplate form language.  For example, it repeatedly referred to payments for "products" that a "vendor" was to supply, even though IronNet was providing both equipment and services under the Master Agreement.  Indeed, the SOW referred to the Master Agreement as the "Master *Services* Agreement" (emphasis added).

16.     The Payment Agreement also purported to be an agreement separate and apart from the Master Agreement.  The form agreement says that it "represents the final and only agreement between You and Us" and contains a disclaimer in the footer of the first page stating that "Customer acknowledges that Asset Finance Group, Inc., a Virginia corporation, is a separate legal entity from IronNet Cybersecurity, Inc. and is not acting as an agent or independent contractor for IronNet Cybersecurity, Inc."  (*Id.*)  Despite this disclaimer, however, the form Payment Agreement affixes the IronNet logo on the top left corner of the page.

17.     IronNet delivered the equipment and services called for under the initial SOW. AEPS accepted the equipment and services called for under the initial SOW and made all payments under the Payment Agreement.

**The Change Order and Second Payment Agreement**

18.     Thereafter, in or around July 2020, AEPS and IronNet entered into a Change Order to the initial SOW.  This Change Order, among other things, modified the "Scope and Objectives" section of the SOW, replaced some of the equipment called for under the SOW, eliminated the "Volume Discounts" section of the SOW, and set out a new project schedule

requiring that IronNet deliver the new equipment in 2021, with follow-on software

enhancements, maintenance, and support each year from 2022 through 2025.  The Change Order

made clear that, other than these changes, the terms of the original SOW were still in effect:

> Except as modified by this Change Order and prior Change Orders, all other
> provisions of the original SOW remain in full force and effect as originally
> written and constitute the legal, valid, binding, enforceable obligation of
> Supplier to Company.

(Change Order, at 3.)  A true and accurate copy of the Change Order is attached to this

Counterclaim at Exhibit C.

19.     Like the initial SOW, the Change Order also contained a payment schedule for

each of the five years of the Change Order.  And the Change Order attached a new Payment

Agreement between AEPS and Asset Finance with the same form terms and conditions as the

first Payment Agreement, and with a payment schedule that mirrored the entire five-year

schedule in the Change Order.  It is this second Payment Agreement between AEPS and Asset

Finance that is the subject of FBC's Complaint in this lawsuit.

20.     During the first year of the Change Order—calendar year 2021—IronNet

delivered and installed, and AEPS accepted and paid for, the project equipment called for under

the payment schedule.  In year two of the Change Order—calendar year 2022—IronNet

supplied, and AEPS accepted and paid for, software enhancements, maintenance and support

called for under the payment schedule.

**AEPS Terminates the Master Agreement and Change Order**

21.     By December 2022, AEPS decided that the equipment and services IronNet was

providing under the Master Agreement, including under the Change Order, were no longer

needed.  On December 20, 2022, and in accordance with Section XII.C of the Master Agreement,

AEPS notified IronNet in writing that it was terminating for convenience the Master Agreement,

including the Change Order, effective 30 days from the date of the notice.  Attached at Exhibit D

to this Counterclaim is a true and accurate copy of the termination notice.

## COUNT I – DECLARATORY JUDGMENT

22.     AEPS re-alleges Paragraphs 1 through 20 of this Counterclaim, inclusive, as if

fully rewritten herein

23.     It is a fundamental principle of contract law that when different instruments are

executed together as part of one transaction or agreement, they are to be read together and

construed as constituting a single instrument.  The instruments should be read in harmony and to

the extent any conflict in terms exist, the more specific governs over the more general.

24.     In this case, the Master Agreement expressly provides that AEPS's payment

obligation is "triggered only upon delivery and/or satisfactory completion of milestones as

specified in the SOW."  (Master Agreement, Sec. III.B.)  IronNet's delivery and satisfactory

completion of milestones in any SOW, including those in the Change Order, is a condition

precedent to any payment from AEPS.

25.     Although the Payment Agreement under which FBC has brought suit contains

sweeping, one-sided provisions that, in isolation, would appear to require AEPS to make

payments unconditionally, such a reading of the Payment Agreement would be legally incorrect

in that it fails to consider the entire transaction of which the Payment Agreement was a part.  It

also fails to consider that both the initial SOW and the Change Order make clear that, insofar as

any conflict arises in their terms and those of the Master Agreement, the Master Agreement

governs.

26.     FBC seeks over $3 million from AEPS for payments for services that IronNet was

to deliver under the Change Order in the years 2023, 2024, and 2025.  But AEPS properly

terminated for convenience the Master Agreement, including the Change Order, in December 2022.  AEPS thus would no longer receive any equipment or services from IronNet in 2023, 2024, and 2025.  Under the Master Agreement, AEPS does not owe any payments for equipment and services it will never receive.  Because AEPS does not owe any payments under the Master Agreement, which has more specific terms and conditions than the Payment Agreement, it has not breached the Payment Agreement.

27.     There is now an actual, genuine, and justiciable controversy between the parties that can only be resolved by declaratory relief.  In accordance with 28 U.S.C. §§ 2201–2202, AEPS is entitled to a declaration that it has not breached and does not owe anything under the Payment Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant American Electric Power Service Corporation demands judgment in its favor and against Plaintiff First Bank Chicago f/k/a First Bank of Highland Park as follows:

(a)     A declaration that it has not breached and does not owe any payments or other moneys under the Payment Agreement at issue in this litigation;

(b)     An award of reasonable attorney's fees and costs; and

(c)     Such other relief as this Court may find just and equitable.

Dated: July 3, 2023                     Respectfully submitted,


                                        /s/ Michelle S. Kallen

                                        Michelle S. Kallen (Bar No. 93286)
                                        JENNER & BLOCK LLP
                                        1099 New York Avenue, NW
                                        Washington, DC 20001
                                        Phone: (202) 639-6000
                                        Facsimile: (202) 639-6066
                                        MKallen@jenner.com

                                        James A. King (*pro hac vice* motion pending)
                                        PORTER WRIGHT MORRIS & ARTHUR LLP
                                        41 South High Street, Suites 2800 – 3200
                                        Columbus, OH 43215
                                        Phone: (614) 227-2000
                                        Facsimile: (614) 227-2100
                                        JKing@porterwright.com

                                        *Attorneys for Defendant American Electric Power*
                                        *Service Corporation*

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2023, I have electronically filed ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF OF DEFENDANT AMERICAN ELECTRIC POWER SERVICE CORPORATION with the Clerk of Court using the ECF system which will send notification of such filing to First Bank Chicago.


Dated this July 3, 2023.

*/s/ Michelle S. Kallen*
Michelle S. Kallen
